**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Joseph Chalifoux

  v.          Case No. 23-cv-23-SE

Proto Labs, LLC


## REPORT AND RECOMMENDATION

  Claiming numerous violations of New Hampshire common law, plaintiff Joseph Chalifoux has sued Proto Labs,[1] for whom he was employed as a contract worker from September 2018 to December 31, 2019.  The defendants have filed a motion to dismiss (Doc. No. 21) eight of the eleven counts in Mr. Chalifoux's amended complaint (Doc. No. 20), which has been referred to the undersigned Magistrate Judge for proposed findings of fact and a recommended disposition. See LR 72.1.[2] As explained more fully below, the defendants' motion should be granted.

---

 [1] Mr. Chalifoux, who is appearing pro se, named "Proto Labs, LLC" as the defendant in his complaint.  The defendant states that such an entity does not exist and presumes that Mr. Chalifoux is referring to Proto Labs, Inc. See Def. Mem. (Doc. No. 21-1) at 1 n.1.  The court need not resolve this discrepancy, and refers to the defendant as "Proto Labs."

 [2] Mr. Chalifoux did not object to the defendant's motion. Pursuant to LR 7.2(b), the failure to object is deemed a waiver of any objection.  The court nevertheless will analyze the defendant's motion on the merits.

## Motion to Dismiss Standard

To defeat a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must include in his complaint factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts may augment those pleaded facts and inferences with information from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. See id. In light of the plaintiffs' pro

se status, the court liberally construes his pleadings. Erickson
v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Complaint Allegations

Mr. Chalifoux worked as an employment recruiter at Proto
Labs from September 2018 until December 31, 2019.  He was a
contract worker hired through Precision Resources Company, Inc.
("PRC"), a staffing agency. Am. Compl. (Doc. No. 20) ¶¶ 3-4, 36-
37, 46, 66.  During his tenure, Mr. Chalifoux raised various
concerns regarding Proto Labs' operations and hiring practices.

Soon after he began working at Proto Labs, Mr. Chalifoux
became concerned that Proto Labs was engaging in improper hiring
practices.  Id. ¶¶ 5-9. Specifically, Mr. Chalifoux believed
that Proto Labs, an ITAR-compliant[3]  facility, was illegally
asking job applicants about their immigration and citizenship
status.  Contrary to Proto Labs's position, Mr. Chalifoux
believed ITAR-registered employers could hire individuals with

---

[3] Pursuant to the President's authority under the Arms
Export Control Act, 22 U.S.C. § 2778 (2006), ("AECA"), the State
Department has promulgated the International Traffic in Arms
Regulations ("ITAR"). See United States v. Zhen Zhou Wu, 711
F.3d 1, 12 (1st Cir. 2013).  Under the ITAR and the AECA, a
party seeking  to export items designated as "defense articles
and defense services" must register and obtain a license for
each export.  See 22 C.F.R. §§ 120.10, 120.11. Transferring such
data to a foreign person within the United States is considered
an "export" under the ITAR, thus triggering registration and
licensing requirements. Violation of the ITAR carries civil and
criminal penalties.  See Stagg, P.C. v. U.S. Dep't of State, 983
F.3d 589. 594 (2d Cir. 2020).

temporary visas in certain roles and that Proto Labs had an obligation to consider each job and its function to determine which should be subject to ITAR. Id. ¶ 9. Accordingly, within his first day or two of working at Proto Labs, Mr. Chalifoux raised the issue during a meeting with Proto Labs's Human Resource Director, Joelle Stone, and its Human Resources Manager, and Linda Peters. Id. ¶ 10.

Mr. Chalifoux also believed that Proto Labs illegally "screened" employment candidates. Id. ¶¶ 28-29. He alleges that Ms. Peters conducted "backdoor" reference checks by contacting individuals she knew at a candidate's prior place of employment to gather information. Id. ¶ 28. He further alleges that Ms. Peters considered information about candidates that she found through a Google search or publicly reported by news outlets, such as a prior arrest. Id. ¶ 29. Mr. Chalifoux alleges that he discussed these concerns with Ms. Peters. Id. ¶ 30.

Mr. Chalifoux further alleges that he was concerned that Proto Labs did not consistently apply its hiring practices. For example, he alleges that Ms. Peters would allow family members to work together at Proto Labs in some instances and not in others, and that Proto Labs would permit hiring individuals who failed a marijuana drug test in some instances and not others. Id. ¶¶ 31, 32, 60, 69, 71-72. Finally, Mr. Chalifoux asserts that Proto Labs often did not hire the best candidate for a job,

but instead hired the youngest candidate in the pool so they
could pay them at the lowest end of the salary band. Id. ¶¶ 57-
59. He believed these inconsistent hiring practices were part of
an "ongoing strategy" by Ms. Peters to "install her own 'people'
in the company so that she could "control Nashua." Id. ¶ 32.

Mr. Chalifoux next claims that Ms. Peters intentionally
misreported recruiting numbers to Proto Labs' Minnesota
headquarters.  Id. ¶¶ 35-38. As an example, he alleges that Ms.
Peters was asked to report the number of candidates who had
declined an offer of employment, but could not do so accurately
because she was making offers to candidates herself rather than
having offers go through recruiting. Id.  Mr. Chalifoux also
claims, without details, that Global Human Resource Director
Michele Bryan also provided "false information relative to
recruiting" to Proto Labs.  Id. ¶ 85.

Mr. Chalifoux further alleges that Ms. Peters and Ms. Stone
exhibited a "bully" mentality and "pick[ed] on" Proto Labs
employees and contract workers who they perceived to be "weak"
and/or "sweet."  Id. ¶¶ 39-41.  Their targets included a 71-year
old receptionist, whom Ms. Peters told was "too old," and whose
personal information Ms. Peters shared with others.  Id. ¶ 51.
Mr. Chalifoux also alleges that Ms. Peters criticized another
employee for leaving the company "high and dry" without training
a replacement the same day Ms. Peters learned that the

employee's son had died. Id. ¶ 86. Also, Ms. Peters and Ms.
Stone said "nasty things" to a third employee and lied to her
hiring managers about her. Id. ¶ 39.  Finally, Mr. Chalifoux
alleges that Proto Labs' Director of Manufacturing Operations,
Mark Dirsa became upset with an employee for reporting mistakes
and "berated" him on the floor and "even chastised him in
meetings." Id. ¶ 80.

In addition to his allegations about her behavior towards
other employees, Mr. Chalifoux avers that Ms. Peters generally
failed to perform her job satisfactorily. Id. ¶ 62. For example,
he asserts that Ms. Peters once failed to cancel badge access
for a former employee and once failed to arrange logistics for a
new temporary hire. Id.  In addition, he claims that Ms. Peters
looked at candidate information on Proto Labs' software when
that was not in the scope her duties and that she took credit
for the work Mr. Chalifoux performed. Id. ¶ 35.  In general,
Mr. Chalifoux asserts Ms. Peters "didn't like people talking, or
even working closely together, if she felt it was a danger to
her power at Proto Labs," which Plaintiff alleges was an effort
to "prevent organizing" under the National Labor Relations Act.
Id. ¶ 67.  He similarly alleges it was Proto Labs' "policy" to
"dissuade employees from discussing their salaries" in what he
believed to be an effort to "stop organizing/unionizing." Id. ¶
68).

Mr. Chalifoux alleges he regularly complained to Ms. Peters and Ms. Stone regarding his concerns. Id. ¶ 59.  He also alleges that he reported his concerns to Global Talent Acquisition Manager Kevin Nyenhuis approximately three months into his placement and again, six months later. Id. ¶¶ 43, 53.  After Mr. Chalifoux raised his concerns, Ms. Peters began to "target him with increasingly [sic] ferocity." Id. ¶ 43. Examples of retaliation include:

- Ms. Peters called PRC to report that Mr. Chalifoux did not report to work when he was at a doctor's appointment with his pregnant wife, despite the appointment being on his calendar. Id. ¶ 44.

- After Mr. Chalifoux arrived at work, Ms. Peters and Mr. Dirsa said, "what happened Joe?" after a candidate to whom Mr. Chalifoux had extended a tentative offer reported to work over the weekend without first passing a drug test. Id. ¶ 47. Ms. Peters subsequently reported hearing that he was "adversarial" with the candidate in a follow-up call.  Id. ¶ 49.

- Ms. Peters reported that Mr. Chalifoux failed to meet a candidate in the lobby after he arranged for the hiring manager to meet the candidate in his absence, and the hiring manager failed to do so. Id. ¶ 61.  After hearing

Mr. Chalifoux's explanation, Ms. Peters apologized. Id. ¶ 63.

- Ms. Peters heard from Mr. Dirsa that Mr. Chalifoux was referring job candidates that did not know the job duties and that he had not talked to in advance, and that Mr. Chalifoux was not communicating with candidates regarding their start dates and on-boarding, both of which Mr. Chalifoux asserts is false. Id. ¶¶ 76-79, 83.

- Ms. Bryan tasked someone with finding "other recruiting options" in New Hampshire and Ms. Peters frequently used another agency for recruiting that Mr. Chalifoux did not hold in high regard. Id. ¶¶ 32, 53, 73

- Ms. Peters saw Mr. Chalifoux talking to Brian Creighton regarding Mr. Creighton's concerns about Mr. Dirsa, and asked Mr. Chalifoux what Mr. Creighton had to say. To Mr. Chalifoux, this was an example of Ms. Peters "clock[ing]" what he was doing. Id. ¶ 82. Mr. Chalifoux told Ms. Peters that Mr. Creighton did not like Mr. Dirsa, and Ms. Peters later (unsuccessfully) opposed Mr. Creighton's promotion. Id.

- Plaintiff believes, from others, that Ms. Peters criticized Mr. Chalifoux's appearance and manner of dress,(*Id.* ¶ 54.), his effectiveness as a recruiter, and

his work habits, which caused at least one co-worker to refrain from engaging with him. Id. ¶¶ 54, 65-66.

On October 31, 2019, Mr. Nyenhuis informed Mr. Chalifoux that December 31, 2019, would be the last day of his contractual placement at Proto Labs. Id. ¶ 84. On November 12, 2019, Plaintiff heard Ms. Peters say (while in the office with her door shut), "now that Joe's finally gone" in a tone that Plaintiff perceived to be "very jubilant." Id. ¶ 87.  On November 21, 2019, Mr. Chalifoux reported his concerns about Proto Labs's policies and Ms. Peters' retaliatory actions to Renee Conklin, Proto Labs's Vice President. She hired outside counsel to conduct an investigation, in which Mr. Chalifoux participated.  He described it as a "mock" investigation which, nevertheless, substantiated his account.  Ms. Conklin, however, neither extended Mr. Chalifoux's contract nor disciplined Ms. Peters.

Mr. Chalifoux asserts twelve counts in his Amended Complaint:  Count I - wrongful termination; Count II - breach of contract; Count III - retaliation (against public policy); Count IV - negligent infliction of emotional distress; Count V - intentional infliction of emotional distress; Count VI - misclassification; Count VII - whistleblower claims; Count VIII - slander; Count IX - libel; Count X - tortious interference; Count XI - breach of the covenant of good faith and fair

dealing; and Count XII - conspiracy.  Proto Labs moves to
dismiss Counts II, IV-VI, and VIII-XII for failure to state a
claim upon which relief can be granted.  See Fed. R. Civ. P.
12(b)(6).  The court addresses the asserted counts in turn.

## **Discussion**

## A.  Breach of Contract (Count II)

Under New Hampshire law, "[a] breach of contract occurs
when there is a failure without legal excuse to perform any
promise which forms the whole or part of a contract." Pro Done,
Inc. v. Basham, 210 A.3d 192, 196 (N.H. 2019) (quoting Lassonde
v. Stanton, 956 A.2d 332, 338 (N.H. 2008)).  Mr. Chalifoux
alleges that the defendant "presented the Plaintiff verbally
that he would be hired as a permanent employee in the following
year.  The Plaintiff rightfully understood this to be a promise
of continued employment . . . ."  Am. Compl. (Doc. No. 20) at
31. The factual underpinning for this claim is that, on June 18
2019, Mr. Nyenhuis "explained that he did in fact want the
Plaintiff to stay on his team, and said he even put in for a
permanent recruiter req that he wanted to hire Plaintiff into in
2020."  Id. ¶ 54.  Under controlling law, however, this
allegation is insufficient to support the claim.

"A valid, enforceable contract requires offer, acceptance,
consideration, and a meeting of the minds."  Tessier v.
Rockefeller, 33 A.3d 1118, 1129 (N.H. 2011) (quoting Durgin v.

*Pillsbury Lake Water Dist.,* 903 A.2d 1003, 1006 (N.H. 2006)).   A meeting of the minds requires that the agreement be manifest and based upon an objective standard. Id. Moreover, "the parties must have the same understanding of the terms of the contract and must manifest an intention . . . to be bound by the contract." Bel Air Assocs. v. New Hampshire Dep't of Health & Human Servs., 960 A.2d 707, 710 (N.H. 2008) (quoting Durgin, 903 A.2d at 1006.) "{B}efore a contract can arise, the offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." Lowry v. Cabletron Sys., Inc., 973 F. Supp. 77, 83 (D.N.H. 1997) (cleaned up).   Such "material terms" of an employment contract include annual base salary, bonus, [incentive plan] eligibility and benefits.   See Gerah v. Siemens Bus. Servs., Inc., No. CV 05-12100-MBB, 2008 WL 11388744, at *6 (D. Mass. Jan. 29, 2008).

Here, the Amended Complaint contains no factual allegations supportive of a meeting of the minds on any contractual term. Moreover, Mr. Nyenhuis expressed only that he would inquire about creating a position for Mr. Chalifoux.   In other words, in addition to a lack of any material terms upon which to agree, the Amended Complaint does not describe a binding offer. Accordingly, the motion to dismiss Count II (breach of contract should be granted.

B.  Negligent Infliction of Emotional Distress (Count IV)

In order to avoid dismissal of  under Rule 12(b)(6) a plaintiff must allege: "(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms." Tessier, 33 A.3d at 1132. (quoting O'Donnell v HCA Health Servs. of N.H., 883 A.2d 319, 324 (N.H. 2005)).  Here, Mr. Chalifoux alleges that he was "affected physically, mentally, and every day [was] walking on eggshells," and that Proto Labs' conduct "caused him physical, financial and emotion[al] damages."  Am Compl. (Doc. No. 20) ¶ 93.  These allegations fall short of stating a claim for relief.

The New Hampshire Supreme Court has held that the emotional harm must be a significant, painful mental experience with lasting effects. O'Donnell, 883 A.2d at 324 (citing Palmer v. Nan King Rest., 798 A.2d 583, 586 (N.H. 2002). The harm must also result in "objective physical symptoms." Tessier, 33 A.3d at 1132.  Here, not only does Mr. Chalifoux fail to describe "serious mental harm" with "lasting effects," his Amended Complaint lacks any indicia of "objective physical symptoms" of his alleged emotional distress.  Accordingly, Mr. Chalifoux's claims of negligent infliction of emotional distress, as set forth in Count IV of his Amended Complaint, should be dismissed.

C.  Intentional Infliction of Emotional Distress (Count V)

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." Mikell v. School Adm. Unit No. 33, 972 A.2d 1050, 1055 (N.H. 2009) (citing Morancy v. Morancy, 593 A.2d 1158, 1159 (N.H. 1991)). "In determining whether conduct is extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice." Id. at 1055 (citation and quotations omitted). Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation omitted).

In Count V, Mr. Chalifoux asserts that he was "subjected to a toxic work environment and termination maliciously, wantonly and purposely."  Am. Compl. (Doc. No. 20) at 32.  This is insufficient to state a viable claim for intentional infliction of emotional distress.

A comparison with the New Hampshire Supreme Court's decision in Mikell is instructive. There, the Court upheld the trial court's dismissal of an emotional distress claim in a case

involving a student who committed suicide. His estate alleged
that a schoolteacher falsely reported a disciplinary infraction
against the student, causing emotional distress that resulted in
the student's suicide. Id. at 1055. The plaintiff claimed that
the teacher's motive was to cause the student's expulsion. Id.
The Court held that while a "teacher falsely reporting
misconduct by a student is a reprehensible act, the
circumstances of this case are simply not beyond all possible
bounds of decency." Id. at 1056. Even as alleged by Mr.
Chalifoux, nothing about the defendants' conduct could be
characterized as "reprehensible," a characterization which
itself was insufficient in Mikell.

A decision by this court also provides guidance. In
Posteraro v. RBS Citizens, N.A., 159 F. Supp. 3d 277 (D.N.H.
2016), the plaintiff sued her supervisor, alleging that he
yelled at her, was physically aggressive, and retaliated against
her complaints of discrimination and harassment, causing the
plaintiff "anxiety and stress issues," on top of her pre-
existing PTSD. Id. at 284. The court granted summary judgment in
favor of the supervisor on the emotional distress claim, finding
that the behavior did not rise to the level of "extreme and
outrageous conduct." Id. at 293. "At best, [the supervisor] was
ineffective in putting an end to sexual banter in the office and
lost his temper on a few occasions." Id. His worst conduct "was

rare and sporadic." Id. Although the alleged behavior arguably
went "beyond the merely unprofessional to the deplorable, ...
New Hampshire law requires more." Id. The allegations that Mr.
Chalifoux lodges against Proto Labs, while not trivial, fall
well short of "extreme and outrageous conduct" as those terms
have been used in this court and the courts of New Hampshire.
Accordingly, Proto Labs's motion to dismiss should be granted as
to Count V, intentional infliction of emotional distress.

D.  Misclassification (Count VI)

In Count VI, Mr. Chalifoux asserts that Proto Labs should
have classified him as an employee rather than a contractor,
thus depriving him of "monies and benefits."  Am. Compl. (Doc.
No. 20) at 32.  But as Judge McAuliffe recently noted, there
appears to be no such cause of action under either state or
federal law.  Pollack v. Goodwin & Assocs. Hosp. Servs., LLC,
No. 20-CV-825-SM, 2021 WL 3853279, at *6 (D.N.H. Aug. 27, 2021)
(noting that state and federal statutes provide private rights
of action for unpaid wages, but not a legal claim for
misclassification.) Proto Labs' motion to dismiss should
therefore be granted as to Count VI.

E.  Slander (Count VIII) and Libel (Count IX)

Under New Hampshire law, "[a] plaintiff proves defamation[4] by showing that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party . . . ." Pierson v. Hubbard, 802 A.2d 1162, 1165 (2002). A statement is defamatory if it "tends to lower the plaintiff in the esteem of any substantial and respectable group of people." Nash v. Keene Publ'g Corp., 498 A.2d 348, 351 (N.H. 1985). Alleged defamatory statements must be read in the context of the entire publication. Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 509 (1st Cir. 2002) (citing Duchesnaye v. Munro Enters., Inc., 480 A.2d 123, 125 (N.H. 1984)). "A statement is not actionable [defamation] if it is substantially true." Moss, 312 F.3d at 509 (citing Simpkins v. Snow, 661 A.2d 772, 776 (N.H. 1995)). Defamation claims are subject to a three-year statute of limitations. Gould v. N. Hum. Servs., No. 2015-0698, 2016 WL 5831602, at *2 (N.H. Aug. 22, 2016) (citing N.H. Rev. Stat. Ann. § 508:4).

Proto Labs argues that it cannot be held vicariously liable for the statements allegedly made by Ms. Peters or Mr. Dirsa.

---

[4] "Defamation is made up of the twin torts of libel and slander—the one being, in general, written while the other in general is oral." McCarthy v. Manchester Police Dept., 124 A.3d 686, 692 (N.H. 2015).  The court, therefore, treats Counts VIII and IX together.

In addition, it asserts that Mr. Chalifoux's defamation claims are barred by the statute of limitations.  The court agrees with the second argument, and therefore does not reach he first.

Mr. Chalifoux commenced this lawsuit in state court on October 31, 2022. Compl. (Doc. 1-1) at 4. Therefore, a defamation claim based on statements made prior to October 31, 2019 is time-barred.  The Amended Complaint, however, contains no actionable statements uttered after October 31, 2019. Indeed, Mr. Chalifoux refers to only two statements made within the limitations period. Neither are actionable, however.  First, he asserts that in early November 2019, two weeks after he was informed that he would not be retained in 2020, he heard (through a closed door) Ms. Peters begin a sentence spoken to a third person by saying, "now that Joe's finally gone."  Am. Compl. (Doc. No. 20) ¶ 87.  Next, Mr. Chalifoux asserts that after his employment was terminated, Ms. Peters "continued to disparage [him] to others, including lying about him, calculated specifically to damage his reputation." Id. ¶ 80.

As to the first statement, there is nothing either false or defamatory about Ms. Peters' statement about Mr. Chalifoux's upcoming departure, which is also presented without any context from which the court could discern a defamatory meaning.  See Moss, 312 F.3d at 509 (noting that courts "must read words alleged to be defamatory in the context of the entire

publication" and denying motion to dismiss based on related statements.).  See also Automated Transactions, LLC v. Am. Bankers Ass'n, 216 A.3d 71, 77 (N.H. 2019) (statements of "rhetorical hyperbole" are not actionable because they cannot reasonably be interpreted as factual assertions.) (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990).  In addition to the lack of context, Ms. Peters' comment falls comfortably within the "rhetorical hyperbole" category.

As to the second allegedly defamatory comment, the lack of specificity is fatal to Mr. Chalifoux's claim. "In pleading an action for defamation, 'the allegations of the complaint must afford defendant sufficient notice of the communications complained of to enable him to defend himself.'" Ford v. Clement, 834 F. Supp. 72, 78 (S.D.N.Y 1993) (quoting Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986)); see also Cluff-Landry v. Roman Cath. Bishop of Manchester, 156 A.3d 147, 155 (2017) (observing that "courts have required that the complaint adequately identify the allegedly defamatory statements."). Against this backdrop, Proto Labs' motion should be granted as to counts VIII and IX.

F. Tortious Interference (Count X)

In Count X, Mr. Chalifoux alleges that he had an "economic relationship" with Proto Labs, with which "Defendant Dirsa" tortiously interfered.  Am. Compl. (Doc. No. 20) at 33. To

establish liability for intentional interference with

contractual relations under New Hampshire law, a plaintiff must

show that: "(1) the plaintiff had an economic relationship with

a third party; (2) the defendant knew of this relationship; (3)

the defendant intentionally and improperly interfered with this

relationship; and (4) the plaintiff was damaged by such

interference." Hughes v. N.H. Div. of Aeronautics, 871 A.2d 18,

28 (N.H. 2005).

     The court first notes that Mr. Dirsa is not a defendant,

nor was he a defendant in this case as it was originally filed

in state court.  But even if he were a defendant, the amended

complaint lacks any allegations that can be fairly construed as

"intentionally or improperly interfer[ing] with" Mr. Chalifoux's

relationship with Proto Labs, or more importantly, the decision

not to re-employ him in 2020.

     Next, to the extent Mr. Chalifoux challenges Mr. Dirsa'a

actions as an agent for Proto Labs, or he claims that Proto Labs

is directly liable for tortious interference, that claim

necessarily fails because "[t]ortious interference with a

contractual relationship requires interference by one who is not

a party to the contract." Tessier, 33 A.3d at 1128. As this

court has observed, "the majority of courts that have addressed

th[e] issue have held that a co-employee cannot be a third party

for the purpose of interfering with the plaintiff's contractual

relationships, if that co-employee is acting within the scope of his employment." Attard v. Benoit, No. 06-CV-355-PB, 2007 WL 4380065, at *6 (D.N.H. Dec. 12, 2007) (citing Albert v. Loksen, 239 F.3d 256, 274–75 (2d Cir. 2001); Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 392–93 (D.N.J. 1998), aff'd 185 F.3d 861 (3d Cir. 1999); Alexander v. Fujitsu Bus. Commc'n Sys., 818 F. Supp. 462, 469 (D.N.H. 1993); Nordling v. N. States Power Co., 478 N.W.2d 498, 507 (Minn. 1991).

Alexander is particularly persuasive. There, the plaintiff sued both his former employer and his former supervisor, alleging that the supervisor tortiously interfered with his employment, and that the employer was vicariously liable for the supervisor's acts. The court granted defendants' motion to dismiss, finding that the plaintiff's supervisor "was acting as an agent of [the employer] and could not be a third party with respect to the employment contract between [the plaintiff] and [the employer]" for purposes of a tortious interference claim. 818 F. Supp at 470. So it is here. Proto Labs' motion to dismiss should be granted as to Mr. Chalifoux's tortious interference claim (Count X).

G. Covenant of Good Faith and Fair Dealing (Count XI)

In Count X, Mr. Chalifoux asserts that "each defendant and other related actors worked in their official and personal capacities . . . to deprive [him] of the benefits of the

contracts he had with Proto [labs]." Am. Compl. (Doc. No. 20) at 33. As previously noted, there is only one defendant in this case, Proto Labs.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another." Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624, 972 A.2d 1005-06 (N.H. 2009). The implied covenant is "comparatively narrow"; it prohibits "behavior inconsistent with the parties' agreed-upon common purpose and justified expectations" or is inconsistent with "common standards of decency, fairness and reasonableness." Id. (quoting Richard v. Good Luck Trailer Court, 943 A.2d 804, 808 (N.H. 2008)). New Hampshire does not merely have "one rule of implied good-faith duty." Livingston, 972 A.2d at 1005-06. Rather, the covenant consists of "a series of doctrines, each of which serves different functions." Id. These doctrines fall into three categories: "(1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance." Id.

It is difficult to discern the precise contours of Mr. Chalifoux's claim as set forth in his amended complaint, a task made more difficult by his failure to object to the instant motion. For example, it is not clear if he is referring to the contract under which he worked at Proto Labs, or the one for future employment he referred to in Count II, as to which the

Case 1:23-cv-00023-SE    Document 22    Filed 12/28/23    Page 22 of 24


court has recommended dismissal.  Regardless, Mr. Chalifoux has failed to allege any facts regarding the formation of either contract, or any discretion Proto Labs exercised during the duration of his employment contract. Accordingly, the Amended Complaint fails to set forth an actionable claim for breach of the covenant and Count X should therefore be dismissed.

H. Conspiracy (count XI)

In Count XI, Mr. Chalifoux alleges that "[a]s enumerated above, there was an agreement between two or more defendants calculated to harm [him]" Am. Compl. (Doc. No. 20) at 33.  Once again, the court notes that there is only one defendant.  For that reason alone, this count should be dismissed, as a conspiracy needs more than one actor.  See Acevedo-Hernandez v. United States, No. CIV. 12-1763 DRD, 2015 WL 859548, at *2 (D.P.R. Feb. 27, 2015) (noting that "it takes two to conspire . . . ." (quoting United States v. Ciresi, 697 F.3d 19, 28 n .5 (1st Cir.2012) (cleaned up).

Moreover, the intracorporate conspiracy doctrine bars this claim even if the court construes it to include other Proto Labs employees as putative conspirators. Pursuant to the doctrine, "the agents and employees of a corporate entity acting within the scope of their employment or authority are legally incapable of conspiring together." Ortolano v. City of Nashua, No. 22-CV-326-LM, 2023 WL 6319586, at *10 (D.N.H. Sept. 28, 2023) (citing

*Carney v. Town of Weare*, 15-cv-291-LM, 2017 WL 680384, at \*15 (D.N.H.2017)).[5] Accordingly, Mr. Chalifoux's conspiracy claim (Count XI) should be dismissed.

### Conclusion

Based on the foregoing, the district judge should grant the defendant's motion to dismiss Counts II, IV, V, VI, VIII, IX, X, and XI. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion. Only those issues raised in the objection(s) to this Report and Recommendation are subject to review in the district court.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).  Any issues not preserved by such objection(s) are precluded on appeal. See id.  Failure to file any objections within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

---

[5] In Carney, the court noted that New Hampshire had not adopted the doctrine, but it concluded that, if confronted with the issue, New Hampshire would adopt it based on traditional principles of agency. Carney, 2017 WL 680384, at \*16. Although the New Hampshire Supreme Court has not weighed in, at least two Superior Court decisions followed Carney's reasoning. See Legacy Global Sports, LP v. St. Pierre, 218-2019-CV-198, 2020 WL 2027401, at \*3 (N.H. Super. Apr. 27, 2020); D.G. Whitefield, LLC v. Cate St. Capital, Inc., 218-2015-CV-1406, 2017 N.H. Super. LEXIS 16, at \*28-29 (N.H. Super. July 10, 2017).

_____
Andrea K. Johnstone
United States Magistrate Judge

December 28, 2023

cc:   Joseph Chalifoux, pro se
      Counsel of Record